**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **WHEELCHAIR AND WALKER RENTALS, INC.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **vs.** § | |
| § | **CIVIL ACTION NO. 3:21-cv-194** |
| **XAVIER BECERRA, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** § | |
| § | |
| § | |
| § | |
| § | |
| **Defendant.** § | |

**VERIFIED COMPLAINT**
**FOR INJUNCTIVE AND DECLARATORY RELIEF AND ATTORNEY FEES**

COMES NOW, Wheelchair and Walker Rentals, Inc. (the "Plaintiff") and files this its

Verified Complaint for Injunctive and Declaratory Relief and Attorney Fees against Xavier

Becerra, Secretary of the United States Department of Health and Human Services (the

"Defendant"), and alleges and avers as follows:

**INTRODUCTION**

1.      Plaintiff refiles its Complaint for Injunctive Relief and Attorney fees that was

dismissed without prejudice by this Court on August 7, 2020, after the parties submitted a Joint

Notice of Stipulation agreeing to a dismissal of the above-styled action.

2.      On July 12, 2016, Defendant noticed a $2,449,631.40 extrapolated Medicare

overpayment determined using sampling. The actual overpayment for the claims that comprised

the 65-claim sample totaled $33,240.04.  Over the past five years, Plaintiff, a durable medical

equipment ("DME") supplier participating in the Medicare program, has endured a torturous

administrative appeal in contesting the overpayment – an administrative process that is supposed

to take no more than a year. Unfortunately, the process is not complete.  Plaintiff has proceeded to the third of the four-stage administrative process. Still, Defendant has failed to adjudicate a hearing within the statutory 90-day period required by 42 U.S.C. § 1395ff. Instead, it is threatening to impose recoupment to collect the overpayment under a scheme that Congress does not countenance under 42 U.S.C. § 1395ddd(f)(2).

3.      In fact, Plaintiff has been waiting over four years for the ALJ hearing that is statutorily required within 90 days but has yet to be held and adjudicated.  Indeed, the DME supplier may wait as long as five years (or more) due to a severe backlog of overpayment appeals.  Imposition of recoupment under the much harsher scheme will force the supplier to shut down its business and file for bankruptcy long before Defendant makes available the statutorily and constitutionally required procedures.

4.      To avoid recoupment of 100% of its Medicare receivables while it awaits the ALJ hearing, Plaintiff entered into an extended repayment schedule (ERS) for 60 months with CMS. As a result, in July 2017, a graduated 60-month ERS was established for Plaintiff's repayment of the revised overpayment amount totaling $2,144,386.40, plus ten percent interest, with the first payment made in August 2017.  The original terms of the ERS require Plaintiff to make twenty-four (24) monthly payments of $21,000, twelve (12) monthly payments of $35,000, twelve (12) monthly payments of $50,000, and to make the last twelve (12) payments at $133,660.25.

5.      However, the parties agreed to the earlier dismissal of this case after renegotiating the extended repayment schedule on August 7, 2020.  As a result, Plaintiff agreed to a revised repayment arrangement that extended the $35,000 installment for an additional year on the belief that the ALJ hearing would be conducted within that period.  Now, more than a year later,

Plaintiff continues to wait for its hearing.  To date, Defendant has recouped approximately $1,503,893.70 of the $2,449,631.40 overpayment.

6.      On September 15, 2021, the monthly installment payment is scheduled to increase to $161,325.51 for the next twelve months.   In an effort to avoid defaulting on the onerous ERS, Plaintiff has initiated staffing cuts and scaled back operations.  Unfortunately, default is inevitable and imminent, despite Plaintiff's efforts, when the installment is increased to $161,325.51.  Upon defaulting, Plaintiff will be placed back into 100% recoupment.  Thus, the threatened 100% recoupment that forced Plaintiff to enter into the ERS and make graduated monthly payments will ultimately force the closure of Plaintiff's entire operation.  A successful business with five offices will be destroyed, and valuable employees will be left without jobs.

7.      Clearly, Defendant's inability to provide an ALJ hearing as required by 42 U.S.C. § 1395ff, combined with the imposition of recoupment to collect the overpayment under a harsher scheme and one not countenanced by Congress under 42 U.S.C. § 1395ddd(f)(2), will result in Plaintiff's irreparable injury, the forced closure of the supplier.  In *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), the Fifth Circuit held the trial court had jurisdiction under the collateral-claim exception to the administrative exhaustion requirement over a supplier's Due Process and *ultra vires* claims.  The *Family Rehab* provider brought an action to prevent recoupment until a hearing could be provided in accordance with 42 U.S.C. § 1395ff(d).  Here, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment of the Medicare overpayment, refund improperly recouped amounts, and halt accrual of interest on the alleged overpayment *until* the government can provide an administrative appeal in accordance with 42 U.S.C. § 1395ff and Due Process of Law. Indeed,

the government's egregious *ultra vires* conduct can only be remedied by an order for injunctive relief otherwise unavailable through the administrative process.

## PARTIES

8.     Plaintiff Wheelchair and Walker Rentals, Inc. is a DME supplier participating in the Medicare program. Plaintiff's principal place of business is located in El Paso, TX.

9.     Defendant Xavier Becerra, in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of Medicare and Medicaid programs. He may be served with process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services, by certified mail.

## JURISDICTION

10.     The Court has jurisdiction pursuant to 28 U.S.C. § 1331 under the entirely collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendant's failure to make available an ALJ hearing within ninety (90) days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the supplier from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires*

actions.[1]  Such failure violates Plaintiff's constitutional right of Due Process guaranteed by U.S. CONST. amend. V, § 1. Moreover, the failure to provide an ALJ hearing within ninety (90) days and the request to suspend recoupment temporarily is not a benefits determination but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits.

11.     Additionally, the Court has jurisdiction over the lawsuit pursuant to 42 U.S.C. §§ 405(g), 1395ii and 1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). Defendant's failure to make available an ALJ hearing (and determination) within ninety (90) days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the supplier from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Section 405 of the statute "would not simply channel review through the agency but would mean no review at all." *Illinois Council*, 529 U.S. at 17. Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). This exception was explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23. The amount in controversy exceeds the $1,000 jurisdictional limit.

### VENUE

12.     Venue is proper in this Court under 42 U.S.C. §§ 505(g), 1395ii and 1395ff(b), and 28 U.S.C. §§ 1391(b) and (e), and 5 U.S.C. § 703.

---

[1] In *Family Rehabilitation*, the Fifth Circuit rejected the government's contention that escalation of a provider's administrative appeal to the Medicare Appeals Council would prevent irreparable injury to the plaintiff.  *See Family Rehabilitation*, 886 F.3d at 506 n.16. Furthermore, the administrative backlog would remain unresolved if every provider/supplier currently awaiting an ALJ hearing escalated to the Council.

## APPLICABLE MEDICARE LAWS

### The Medicare Program

13.     As part of the Social Security Amendments of 1965, Congress established the

Medicare program: a national health insurance plan to cover the cost of medical care for the

elderly and disabled. *See* 42 U.S.C. §§ 1395 *et seq*. Officially known as "Health Insurance

Benefits for the Aged and Disabled," it provides basic protection against inpatient hospital and

other institutional care costs. It also covers the costs of physician and other healthcare provider

services and items not covered under the basic program, or "Part A." In 1997, beneficiaries were

extended the option of choosing a managed care plan. More recently, in 2006, the program was

expanded further to include a prescription drug benefit.

### Durable Medical Equipment (DME)

14.     Medicare covers durable medical equipment furnished to beneficiaries by

suppliers participating in the program. *See* 42 U.S.C. § 139x(s)(6); 42 C.F.R. §§ 410(h),

410.38(a). To be reimbursed for such medical equipment, a supplier must receive a signed

certificate of medical necessity ("CMN") from the treating physician. A supplier must have a

signed original, faxed, photocopied, or electronic CMN in its records before submitting a claim

for payment to Medicare. Also, it must maintain the supporting documentation and make them

available to CMS upon request for seven years from the date of service. *See* 42 C.F.R. §§

410.38(g)(5) and 424.516(f).

### Payment and Audit Functions

15.     Medicare's payment and audit functions are performed by various federal

contractors. For instance, the payment of DME claims at issue in this case was made by CGS

Administrators. In addition, various other contractors, like Qlarant Solutions, Inc., a Unified

Program Integrity Contractor ("UPIC"), investigate instances of suspected fraud, waste, and abuse and identify any improper payments to be collected by Administrative Contractors.

### Appeal Process

16.     DME suppliers participating in the Medicare program are entitled to appeal the initial action. *See* 42 U.S.C. § 1395ff. Federal regulations establish an elaborate administrative appeal process to review the adverse action. *See* 42 C.F.R. Subpart I – Determination, Redeterminations, and Appeals Under Original Medicare. A supplier dissatisfied with an initial determination may request a Redetermination by a contractor in accordance with 42 C.F.R. §§ 405.940-405.958. The Redetermination must be issued within 60 calendar days. If a supplier is dissatisfied with a Redetermination decision, it may request a Reconsideration by a Qualified Independent Contractor ("QIC") in accordance with 42 C.F.R. §§ 405.960-405.986. The Reconsideration must be issued within 60 calendar days. In the event the supplier is dissatisfied with the Reconsideration decision, it may request an ALJ hearing in accordance with 42 C.F.R. §§ 405.1000-405.1054.

17.     The ALJ must issue a decision within 90 calendar days. The supplier may request a review of the ALJ's decision by the Medicare Appeals Council in accordance with 42 C.F.R. §§ 405.1100-405.1140. The Council must issue a decision within 90 calendar days. The Council's decision is the final agency action, and it is subject to judicial review. See 42 U.S.C. § 1395ff; 42 C.F.R. §§ 405.1130, 405.1132, 405.1134; *see also* 42 U.S.C. § 405(g).

### Appeal Backlog and Resulting Delays in Adjudication Times

18.     Despite the statutorily mandated time periods governing the appeals process, in practice, it takes a supplier much longer to fully pursue its claim through the Medicare appeals process due to the extreme backlog of Medicare appeals.

19.     The exponential increase in claim appeals and the delay in the Medicare appeals process were largely fueled by the Medicare Fee-For-Service-Recovery Audit Contractor Program ("RAC Program"). This demonstration program was nationally instituted and expanded by 2010. Under the RAC Program, aggressive government contractors issued numerous inappropriate claim denials, forcing a disproportionate number of suppliers into the Medicare appeals system.[2]

20.     By OMHA's own admission, the ALJs have simply been unable to keep up with the increasing volume of Medicare appeals.[3]  Indeed, the most recent data that the number of Medicare appeals has grown to the point wherein Fiscal Year ("FY") 2020, the *average processing time* for an appeal at the third stage is 1,430.1 days (or almost four years).  *See Average Processing Time by Fiscal Year*, available at https://www.hhs.gov/about/agencies/omha /about/current-workload/average-processing-time-by-fiscal-year/index.html?language=es (accessed on August 17, 2021). Moreover, the average processing time has increased each year from 2009 to the present, and the trend does not appear to be reversing despite assurances. *Id*.

21.     Clearly, the situation is only deteriorating based on the growing number of appeals cited above. The predicated wait times to obtain a hearing once a case is assigned to an ALJ means providers who lodge new appeals from the QIC to the ALJ can realistically expect to wait three to five years – and likely longer – to even obtain an ALJ hearing, much less a decision.

---

[2] As required by Section 1893(h) of the Act, RACs are paid on a contingency fee basis.  The base contingency fees range from 10.4 - 14.4 percent for all claim types, except DME. The contingency fees for DME claims range from 15.4 – 18.9 percent.  *See* CMS's FY 2016 Report to Congress under §1893(h), "Recovery Auditing in Medicare for Fiscal Year 2016," available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-Programs/Medicare-FFS-Compliance-Programs/Recovery-Audit-Program/Downloads/FY-2016-Medicare-FFS-Report-Congress.pdf (last accessed on November 11, 2019).

[3] Maria Castellucci*, HHS Says It Can't Clear Medicare Appeals Backlog by 2021 Deadline*, MODERN HEALTHCARE (Mar. 8, 2017), available at
http://www.modernhealthcare.com/article/20170308/NEWS/170309902 (discussing a report by HHS made to the U.S. District for the District of Columbia).  *See also Maxmed HealthCare, Inc. v. Price*, 860 F.3d 335, 344-45 (5th Cir. 2017) (noting the serious backlog of agency appeals, the lack of resources to deal with the problem, HHS's admissions in federal court, and the "redundant, time-consuming, and costly procedures" that mire providers).

22.     It is noteworthy that the Medicare Appeals Council ("MAC") also has a substantial backlog and delay akin to that of ALJ hearings, but it does not publish the average processing time for these appeals. *See American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016).  However, where the *average* processing time for ALJ hearings is almost four years, the delay before the MAC at the fourth step of the process would be presumed to be comparable if a provider were to escalate its appeal.

### CONDITIONS PRECEDENT

23.     All conditions precedent have been performed or have occurred.

### FACTS

### Medicare Supplier

24.     Wheelchair & Walker Rentals, Inc. began in 1972 as a proprietary business.  In 1974, it was incorporated as a "C" corporation.  The capital contributed by the owner in 1974 was $47,000.00.  At the time, there were no financial requirements imposed by the Medicare program to obtain a supplier agreement.  In 2007, DME companies were required to become accredited for purposes of Medicare enrollment. The Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Competitive Bidding Program, mandated by Congress through the Medicare Prescription Drug, Improvement, and Modernization Act (MMA) of 2003, introduced financial assessments, credit checks, and bond requirements for DME companies enrolled in Medicare. Wheelchair has met all Medicare requirements, however changing and evolving, since the 1970s.  As a Medicare-participating business that has been in existence since the Nixon Administration, Wheelchair has prided itself on operating with integrity and honesty.

25.     In 2016, Plaintiff was a successful business valued at over $1 million. Plaintiff derives some 70% of its total revenues from Medicare payments. However, Plaintiff has been operating at a loss since initiation of its appeal of the alleged overpayment determination in 2016. As a result, the business is teetering on the edge of closure and bankruptcy.  To date, Defendant has recouped approximately $1,503,893.70 of the $2,449,631.40 overpayment.

## Initial Determination

26.     On June 29, 2016, Health Integrity, L.L.C., a Zone Program Integrity Contractor ("ZPIC"), determined a $2,449,631.40 overpayment for claims submitted from September 30, 2012, through February 5, 2016.[4]  The ZPIC extrapolated the overpayment using a sampling methodology. The actual amount of the overpayment was $33,240.04, which was determined based upon a review of records for 65 claims submitted by the supplier for payment. Of these claims, 65 were denied.

27.     On July 12, 2016, CGS Administrators, L.L.C., a Medicare Administrative Contractor ("MAC"), notified Plaintiff of the $2,449,631.40 Medicare overpayment. According to the notice, the overpayment was based upon a post-pay investigation conducted by Health Integrity, L.L.C., and reflected the Medicare overpayment determination issued on June 29, 2016. Additionally, this notice informed the supplier of its administrative appeal rights.

## Redetermination

28.     On or about August 10, 2016, Plaintiff requested redetermination of the individual post-payment denials and overpayment determination pursuant to 42 C.F.R. §§ 405.940 *et seq*., disputing and contesting the overpayment determination.

---

[4] Qlarant, a Unified Program Integrity Contractor ("UPIC"), has evolved to perform audit, oversight and antifraud, waste and abuse functions.

29.     On or about October 12, 2016, the MAC issued unfavorable redetermination decisions sustaining the overpayment determination and post-payment denials.

## Reconsideration

30.     On or about November 23, 2016, Plaintiff requested reconsideration of the MAC's decisions contesting the denial of individual claims and the overpayment's extrapolation.

31.     On or about March 6, 2017, C2C Innovative Solutions, the Qualified Independent Contractor ("QIC"), issued a partially favorable decision on the overpayment determination and post-payment denials.

32.     On or about April 14, 2017, Plaintiff received a revised demand letter which reflected the QIC's partially favorable reconsideration decision. The new principal balance was $2,144,386.40, and the interest balance was $160,829.01 for a total amount due of $2,305,215.41.

## ALJ Hearing

33.     On or about April 24, 2017, Plaintiff filed its request for a hearing before an administrative law judge. To date, Plaintiff has not received a hearing.

34.     Notwithstanding HHS's failure to provide an ALJ hearing with 90 as required by 42 U.S.C. § 1395ff, Defendant imposes recoupment to collect the overpayment under a scheme that Congress does not countenance under 42 U.S.C. § 1395ddd(f)(2).

## Improper Recoupment

35.     Based on Defendant's recent reports, the hearing and decision required within 90 days may not be available for at least another three to five years due to the severe backlog of agency appeals.

### Extended Repayment Schedule

36.     On June 22, 2017, Plaintiff received approval on its ERS request. In July 2017, a graduated 60-month ERS was established for Plaintiff's repayment of the revised overpayment amount totaling $2,144,386.40, plus ten percent interest, with the first payment made by August 2017. The terms of the 2017 ERS required Plaintiff to make twenty-four (24) monthly payments of $21,000, twelve (12) monthly payments of $35,000, twelve (12) monthly payments of $50,000, and $133,660.25 for the remaining twelve (12) months of the ERS. This graduated plan does not consider the lack of business growth or any other external factors that would affect Plaintiff's ability to pay. The parties renegotiated the extended repayment schedule on August 7, 2020. As a result, Plaintiff agreed to a revised repayment arrangement that extended the $35,000 installment for an additional year on the belief that the ALJ hearing would be conducted within that period. Now, more than a year later, Plaintiff continues to wait for its hearing. To date, Defendant has recouped approximately $1,503,893.70 of the $2,449,631.40 overpayment

37.     In an effort to avoid defaulting on the ERS, Plaintiff has made continuous staffing cuts and scaled back operations.  Despite its efforts, default is inevitable and imminent.  The supplier cannot continue making payments under the onerous ERS, and it will soon default. Upon default, Plaintiff will be placed back into 100% recoupment.

### Presentment

38.     On August 19, 2021, Plaintiff sent a letter to Xavier Becerra, Secretary of HHS, with courtesy copies to Capt. Mehran S. Massoudi, Ph.D., MPH, Regional Administrator, CMS, Region VI, and Daniel Wolfe, Assistant Regional Counsel, Office of General Counsel, HHS, resubmitting its collateral constitutional claim.  Previously, in August 2019, and again in early January 2020, Plaintiff sent letters to Alex M. Azar, II, the Secretary of HHS, and presented its

collateral constitutional claim to the government.  In its correspondence, Plaintiff asserted that HHS violates rights to Due Process of Law because it failed to adjudicate an ALJ hearing within the 90-day statutory period as required by 42 U.S.C. §1395ff, while at the same time recouping Plaintiff's Medicare payments to collect the alleged overpayment under a harsher scheme than the one countenanced by Congress under 42 U.S.C. § 1395ddd(f)(2).  Plaintiff presented its claim of irreparable harm and the imminent forced shutdown of business and bankruptcy upon default of the onerous ERS long before receiving an ALJ hearing.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

39.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the supplier from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Such failure violates 42 U.S.C. § 1395ff(d) and Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, § 1. Under these facts, the administrative exhaustion requirement is excused.

## CLAIMS FOR RELIEF

### Count 1 – Violation of Procedural Due Process of Law

40.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

41.     The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee that no person shall be deprived of life, liberty, or property without Due Process of Law.

42.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

43.     Despite its inability to adjudicate the overpayment appeal, Defendant initiates 100% recoupment of the supplier's payments after completing the second stage of the appeal, which will irreparably harm the supplier by forcing it to close and file bankruptcy.

44.     Indeed, Defendant's failings have essentially denied Plaintiff the fundamental requisites of Due Process, notice, and an opportunity to be heard.

45.     Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. § 1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. § 1395ddd(f)(2).

46.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment, refund the improperly recouped amounts, and halt accrual of interest on the alleged overpayment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count 2 – Violation of the Medicare Act**

47.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

48.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

49.     Despite its inability to adjudicate the overpayment appeal, Defendant initiates 100% recoupment of the supplier's payments after completing the second stage of the appeal, which will irreparably harm the supplier by forcing it to close and file bankruptcy.

14

50.     Indeed, Defendant's failings have essentially denied Plaintiff the fundamental requisites of Due Process, notice, and an opportunity to be heard.

51.     Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. § 1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. § 1395ddd(f)(2).

52.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment, refund the improperly recouped amounts, and halt accrual of interest on the alleged overpayment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

### Count 3 – Violation of the Overpayment Recovery Scheme

53.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

54.     Defendant shall abide by the statutory scheme created by Congress in the recovery and collection of overpayments set out in 42 U.S.C. § 1395ddd, and particularly observe the statutory protections against premature recoupment afforded by 42 U.S.C. § 1395ddd(f)(2) to healthcare providers and suppliers.

55.     Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates 42 U.S.C. § 1395ddd, deprives Plaintiff of Due Process, and the administrative process required under 42 U.S.C. § 1395ff(b).

56.     Despite its inability to adjudicate the overpayment appeal, Defendant initiates 100% recoupment of the supplier's payments after completing the second stage of the appeal, which will irreparably harm the supplier by forcing it to close and file bankruptcy.

57.     Indeed, Defendant's failings have essentially denied Plaintiff the fundamental requisites of Due Process, notice, and an opportunity to be heard.

58.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment, refund the improperly recouped amounts, and halt accrual of interest on the alleged overpayment until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count 4 – *Ultra Vires***

59.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

60.     Defendant acts *ultra vires* in failing to provide the ALJ hearing in accordance with 42 U.S.C. § 1395ff(d)(1)(A) and yet imposing recoupment to collect the Medicare overpayment.

61.     Despite its inability to adjudicate the overpayment appeal, Defendant initiates 100% recoupment of the supplier's payments after completing the second stage of the appeal, which will irreparably harm the supplier by forcing it to close and file bankruptcy.

62.     Indeed, Defendant's failings have essentially denied Plaintiff the fundamental requisites of Due Process, notice, and an opportunity to be heard.

63.     Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment, refund the improperly recouped amounts, and halt accrual of interest on the alleged overpayment until it can provide a hearing a decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

## Count 5 – Declaratory Judgment

64.     Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

65.     In accordance with 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57, Plaintiff seeks a declaratory judgment so that the parties may know and exercise their respective rights.

66.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between parties to warrant the issuance of a declaratory judgment that HHS has violated Plaintiff's right to Due Process of Law by its failure to provide an ALJ Hearing within the 90-day statutory period, while at the same time imposing 100% recoupment of Plaintiff's Medicare payments to collect the alleged overpayment, and thereby irreparably harming the supplier by forcing it to cease operation and file bankruptcy immediately.

## REQUEST FOR PRELIMINARY INJUNCTION

67.     In accordance with Fifth Circuit case law, a party seeking preliminary injunctive relief must establish: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the injunction is not issued; (iii) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (iv) that the grant of the injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (quoting *Bynum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). Similarly, to secure a temporary restraining order ("TRO"), a party must show a "substantial threat" of irreparable harm will ensue if the injunction is not granted. To establish this substantial threat of irreparable injury, a party must show "a significant threat of injury from the impending action, that the

injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson*, *M.D., PA*., 804 F.2d 1390, 1394 (5th Cir. 1986).

68.     Plaintiff will suffer irreparable injury if Defendant is not required to temporarily suspend recoupment and refund the improperly recouped amounts until it can provide a hearing decision within 90 days or otherwise follow the statutorily and constitutionally required procedures. Defendant's inability to provide an ALJ hearing as required by 42 U.S.C. § 1395ff, combined with the imposition of recoupment to collect the overpayment under a harsher scheme and one not countenanced by Congress under 42 U.S.C. § 1395ddd(f)(2), will result in Plaintiff's irreparable injury, the forced closure of the supplier.

69.     Plaintiff has a property interest in the Medicare payments for services rendered. Prior to the government's action, Plaintiff was a successful business that has operated since 1972. It derives approximately 70% of its total revenues from Medicare payments.  Imposing recoupment while a genuine billing dispute remains mired in the backlog of hundreds of thousands of claims pending before OMHA will irreparably harm Plaintiff by destroying its business and ultimately forcing the supplier to file bankruptcy.  It also will cause the Medicare beneficiaries relying on the supplier to seek durable medical equipment elsewhere unexpectedly. The collection and recoupment of the extraordinary amounts at issue without providing Plaintiff notice and a meaningful opportunity to be heard, as required by the applicable statute, violates Plaintiff's Due Process rights. The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process. Clearly, the combined threats of going out of business and the disruption to Medicare patients are sufficient for irreparable harm. *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018).

70.     There is no adequate remedy at law because Defendant has effectively deprived Plaintiff of the very administrative process required under 42 U.S.C. § 1395ff(b) due to the government's inability to adjudicate the ALJ hearing. Defendant's failure to provide an ALJ hearing as required by 42 U.S.C. § 1395ff, combined with the imposition of recoupment to collect the overpayment under a harsher scheme and one not countenanced by Congress under 42 U.S.C. § 1395ddd(f)(2), will result in Plaintiff's irreparable injury, the forced closure of the supplier.  Indeed, the government's egregious *ultra vires* conduct can only be remedied by an order for injunctive relief otherwise unavailable through the administrative process.

71.     There is a substantial likelihood that Plaintiff will prevail on the merits of its procedural Due Process claim because Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.  Plaintiff has a property interest in the Medicare payments for services rendered. However, waiting three to five years for a hearing while overpayments are recouped creates a high risk of erroneous deprivation of the supplier's Medicare receivables.  Moreover, this failure to follow Congress's mandated procedures results in inadequate procedural Due Process.  *See Family Rehabilitation, Inc. v. Azar*, Civil Action No.  3:17-CV-3008-K, 2018 WL 3155911, at *4 (N.D. Tex. June 28, 2018); *Med-Cert Home Care, L.L.C. v. Azar*, 365 F. Supp. 3d 742 (N.D. Tex. Feb. 2, 2019) (Procedural due process violated by CMS's failure to comply with the statutorily mandated procedure to hold hearing within 90-days of filing); *Adams EMS, Inc. v. Azar*, Civil Action No. H-18-1443, 2018 WL 5264244, at * (S.D. Tex. Oct. 23, 2108) (Supplier statutorily entitled to ALJ decision in 90 days, and three to five-year delay poses a high risk of deprivation).  Nor does "escalation provide a remedy to the backlogged ALJs because it does not provide adequate procedural due process."  *Family Rehab.*, 2018 WL 3155911, at *5.

72.     The threatened injury faced by Plaintiff outweighs the harm that Defendant would sustain if injunctive relief is not granted.  The supplier will shutter its doors, employees will lose their jobs, and patients will lose their healthcare supplier while waiting for the statutorily mandated ALJ hearing if injunctive relief is not granted. Moreover, Defendant will not suffer harm from granting relief because Medicare will have the opportunity to recoup any overpayments if the ALJ reaches a decision in its favor. *Family Rehab*., 2018 WL 3155911, at *7; *Med-Cert*, 365 F. Supp. 3d at 757.  Indeed, Defendant will only be required to do what it is otherwise obligated to do under the law and pay for the current claims of Medicare beneficiaries.

73.     Issuance of a TRO or preliminary injunction would not adversely affect the public interest. Plaintiff's quality of medical equipment is not at issue, only the reimbursement for the product. Thus, no public interest would be adversely affected by granting injunctive relief.  If anything, the public would benefit from continued access to the supplier.  *Family Rehab*., 2018 WL 3155911, at *7; *Med-Cert*, 365 F. Supp. 3d at 757 (Not disserve the public interest by conflicting with Congress' statutory scheme).  Moreover, such relief ensures that Defendant will no longer act *ultra vires* in collecting the alleged overpayment.

74.     Plaintiff is willing to post a bond in the amount the Court deems appropriate. Still, it should not be required to do so on the facts of this case and because Defendant is otherwise obligated to pay clean claims for durable medical equipment for Medicare beneficiaries.

75.     Plaintiff asks the Court to set its application for TRO and to issue the TRO immediately. Plaintiff also the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

**REQUEST FOR PERMANENT INJUNCTION**

76.     Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

**ATTORNEY FEES & COSTS**

77.     Plaintiff is entitled to an award of attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, upon showing the applicant is a "prevailing party;" a showing that the applicant is "eligible to receive an award; and a statement of "the amount sought, including an itemized statement from any attorney . . . stating the actual time expended and the rate" charged. The prevailing party is entitled to such attorney fees unless the government's position was "substantially justified" or special circumstances make an award unjust.

**PRAYER**

78.     For these reasons, Plaintiff asks for judgment against Defendant for the following:

a.     A declaration that Defendant has violated Plaintiff's right to Due Process of Law by failing to provide an ALJ Hearing within the 90-day statutory period, while at the same time imposing recoupment of Plaintiff's Medicare payments to collect the alleged overpayment, and thereby irreparably harming the supplier by forcing it to cease operation and file bankruptcy.

b.     A declaration that Defendant has violated the Medicare Act by failing to provide an ALJ hearing within 90 days as required by 42 U.S.C. § 1395ff(b).

c.     A declaration that Defendant has failed to abide by the statutory scheme created by Congress in failing to provide a hearing within the 90-day

statutory period while imposing recoupment in a context not countenanced in 42 U.S.C. § 1395ddd(f)(2).

d.    A declaration that Defendant acted *ultra vires* in failing to provide an ALJ hearing in accordance with 42 U.S.C. § 1395ff(d)(1)(A) and yet imposing recoupment to collect the Medicare overpayment.

e.    Preliminary injunctive relief, enjoining and suspending recoupment, returning recouped funds to Plaintiff, and halting accrual of interest on the alleged overpayment amount until Defendant can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

f.    A final, permanent injunction that suspends recoupment, returns recouped funds to Plaintiff and halts accrual of interest on the alleged overpayment amount until Defendant can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

g.    Reasonable attorney fees.

h.    Court costs.

i.    All other relief the Court deems appropriate.

Respectfully submitted,

**KENNEDY**
Attorneys & Counselors at Law

/s/ Mark S. Kennedy
MARK S. KENNEDY
State Bar of Texas No. 24000122
LURESE A. TERRELL
State Bar of Texas No. 24008139

C. TREY SCOTT
State Bar of Texas No. 24083821
12222 Merit Drive, Suite 1750
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320
mark@markkennedylaw.com

**ATTORNEYS FOR PLAINTIFF**


**Moss Legal Group, PLLC**

/s/ Cindy M. Vazquez
M. MITCHELL MOSS
State Bar of Texas No. 00784647
CINDY M. VAZQUEZ
State Bar of Texas No. 24100497
5845 Cromo Dr., Suite 2
El Paso, TX 79912
Telephone: (915) 703-7307
Fax: (915) 703-7618
cindy@mosslegalsolutions.com

**LOCAL COUNSEL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **WHEELCHAIR AND WALKER RENTALS, INC.,** §<br>§<br>§ | |
| **Plaintiff,** §<br>§ | |
| **vs.** §<br>§ | **CIVIL ACTION NO. _____** |
| **XAVIER BECERRA, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** §<br>§<br>§<br>§<br>§ | |
| **Defendant.** §<br>§ | |

### VERIFICATION

"I, Michael L. Demock, declare from my personal knowledge that the following facts are true:

1. I, Michael L. Demock, am the CEO of Wheelchair and Walker Rentals, Inc.

2. I have read the Verified Complaint for Injunctive and Declaratory Relief and Attorney Fees.

3. The facts stated in that complaint are within my personal knowledge and are true and correct.

I verify under penalty of perjury that the foregoing is true and correct."

Executed on August 23, 2021.

_____
Michael L. Demock